# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BOARD OF EDUCATION OF THE CITY OF CHICAGO, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 09 C 6571<br>)<br>) Judge Ruben Castillo |
| NAOMI WALKER, parent and next friend of RAMIE P., a minor, | )<br>)<br>) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

The Board of Education of the City of Chicago ("Board") brought this action against the Illinois State Board of Education ("ISBE") and Naomi Walker, parent and next friend of Ramie P., a minor, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1401 *et seq.*[1] (R. 1, Compl.) Presently before the Court is Walker's motion for attorneys' fees pursuant to Local Rule 54.3 and the IDEA, 20 U.S.C. § 1415(i)(3)(B)(i). (R. 38, Walker's Mot.) For the reasons stated below, Walker's motion is granted.

## BACKGROUND

This motion for attorneys' fees follows the Board's unsuccessful appeal of the ISBE's Impartial Hearing Officer's decision regarding the Board's failure to deliver compensatory services agreed to in Ramie's Individual Education Plan ("IEP"). Because the formulation of Ramie's IEP, the administrative due process proceedings, and the subsequent appeal are all pertinent to the present motion, the Court will briefly review the facts set forth in its prior

---

[1] On April 15, 2010, the ISBE filed an unopposed motion to be dismissed from this action. (R. 32, ISBE's Mot. to Dismiss.) The Court granted the motion on April 16, 2010. (R. 34, Min. Entry.) Accordingly, Walker remains as the only defendant in this case.

decision granting Walker's motion for summary judgment and denying the Board's motion for summary judgment. *See Bd. of Educ. of the City of Chi. v. Ill. Bd. of Educ.*, 741 F. Supp. 2d 920 (N.D. Ill. 2010).

Ramie was declared eligible for special education and related services while enrolled in the Chicago Public Schools ("CPS"). *Id.* at 922. On August 6, 2008, Walker filed a due process complaint alleging that the Board had denied Ramie a free appropriate public education ("FAPE"). *Id.* As relief, Walker requested that the Board be required to convene and develop an appropriate IEP for Ramie. *Id.* In addition, Walker requested compensatory services including: one-on-one tutoring, speech language and occupational therapy services, assistive technology, and other appropriate relief. *Id.* In response to Walker's complaint, the ISBE appointed Impartial Hearing Officer, Mary Onken (the "hearing officer"). *Id.* The hearing officer ordered the parties to participate in an IEP meeting on November 12, 2008. *Id.*

During the November 12 meeting, an IEP was created for Ramie that authorized six weeks of summer school and placement in a therapeutic day school (the "November 12 IEP"). *Id.* The November 12 IEP also indicated that the Board agreed to provide compensatory services for Ramie, including two years of tutoring and speech therapy, reimbursement for tutoring paid for by the parent in the last two years, and software for a home computer. *Id.*

On November 26, 2008, Walker requested another due process hearing claiming, in part, that the Board had failed to implement the November 12 IEP within ten days as required by state regulations. *Id.* As a remedy, Walker requested that the Board "immediately" provide Ramie with tutoring, speech services, and reimbursement for past tutoring services. *Id.* The Board,

however, took the position that it had implemented the November 12 IEP and that there was no absolute date to commence providing the agreed upon tutoring and speech services. *Id.*

The hearing officer made efforts to resolve this matter and, on May 6, 2009, sent a letter to the parties seeking clarification of their respective positions regarding implementation of compensatory services. *Id.* The Board responded to the hearing officer's request indicating that reimbursement for tutoring services had been issued and tutoring would start after the current school semester. *Id.* Walker objected to this response because it did not indicate a specific date for the tutoring services to begin. *Id.*

On May 10, 2009, Walker filed a motion for summary judgment requesting that the hearing officer issue a final order directing the Board to implement the November 12 IEP related to compensatory services. *Id.* At the direction of the hearing officer, the parties participated in a resolution session on May 12, 2009. *Id.* During the session, the Board indicated that the names and credentials of the providers and the start date for compensatory services would be provided in two weeks. *Id.* Later, on June 16, 2009, the Board advised the hearing officer that it was still "working on facilitating" the compensatory services agreed upon in the November 12 IEP. *Id.* at 922-23.

On June 21, 2009, the hearing officer found that there was no genuine issue of fact and issued an order granting Walker's motion for summary judgment. *Id.* at 923. Specifically, the hearing officer found that based on the Board's admissions that they were still "working on facilitating" the agreed upon compensatory services, the November 12 IEP had not been implemented in full. *Id.* In addition, the hearing officer found that Walker had provided a legal basis to demand that the IEP be implemented in a timely manner, while the Board failed to

provide any state or federal regulations or case law in support of its claim that they were not required to implement the November 12 IEP within 10 days. *Id.* Accordingly, the hearing officer's order directed the Board to implement the compensatory services of the November 12 IEP within ten days of receipt of the decision. *Id.*

On October 19, 2009, the Board filed a complaint in this Court pursuant to the IDEA requesting that the hearing officer's summary judgment decision be reversed. (R. 1, Comp.) The Board claimed that compensatory services are not required to be delivered within ten days of an IEP and that this decision was "outside the authority" of the hearing officer. (*Id.* ¶¶ 10-11.) On March 2, 2010, the parties filed cross motions for summary judgment. (R. 19, Board's Summ. J. Mot.; R. 22, Walker's Summ. J. Mot.) On September 29, 2010, the Court found that the hearing officer's summary judgment decision was sufficiently supported by the record, and accordingly denied the Board's motion for summary judgment and granted Walker's motion for summary judgment. *Bd. of Educ. of the City of Chi.*, 741 F. Supp. 2d at 925.

On December 14, 2010, Walker filed a motion for attorneys' fees. (R. 39, Walker's Mot.) Attached to her motion are fee petitions detailing the fees and costs Walker incurred in litigating the due process hearing and in defending the Board's appeal in this Court, which total $84,227.95. (*Id.*, Exs. B-E.) Walker contends that she is entitled to attorneys' fees because she was the prevailing party at the due process proceedings and on appeal and the requested attorneys' fees are reasonable. (R. 39, Walker's Mem. at 3-4.) In response, the Board agrees that Walker was a prevailing party entitled to reasonable attorney fees, but disputes that all of the fees requested by Walker are related to the subject matter of the judicial resolution. (R. 47, Board's

Resp. at 2.) Additionally, the Board argues that the fees Walker requests are unreasonable. (*Id.* at 7.)

## DISCUSSION

The primary purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(A). Parents who disagree with a local educational agency's "identification, evaluation, or educational placement of [their] child, or the provision of a free appropriate public education to such child," may request an impartial due process hearing conducted by the appropriate state educational agency. *Id.* §§ 1415(b)(6)(A), (f)(1)(A). The IDEA, like many federal statutes, further provides that in any action or proceeding brought pursuant to the IDEA, a court, in its discretion, may award "reasonable attorney's fees" as part of the costs to a "prevailing party" who is a parent of a child with a disability. *Id.* § 1415(i)(3)(B).

Under the IDEA, a court's analysis of an appropriate fee award begins with determining whether the party seeking fees is entitled to "prevailing party" status. *Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709 (7th Cir. 2005). Next, if the party seeking the fees crosses this "statutory threshold," a court must determine whether the claimed fees are reasonable under the circumstances. *Id.* The starting point of this inquiry is the lodestar figure—"the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009) (citation omitted). Once this figure is determined, a court considers the factors set out in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), and adjusts the fee award accordingly. *Id.*

I. **Prevailing party**

5

To determine whether Walker is entitled to attorneys' fees, the Court must first decide whether Walker is a prevailing party. In general, courts apply the same principles applicable to attorneys' fees awards for civil rights cases under 42 U.S.C. § 1988 to cases brought under the IDEA, including the meaning of "prevailing party." *See Jodlowski v. Valley View Cmty. Unit Sch. Dist. No. 365-U*, 109 F.3d 1250, 1253 n.2 (7th Cir. 1997). To qualify as a prevailing party for purposes of the IDEA, a party must obtain "actual relief on the merits of a claim that materially alters the legal relationships between the parties in a way that directly benefits [that party]." *Linda T.*, 417 F.3d at 707-08 (internal citations omitted).

In *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources*, the Supreme Court narrowed the circumstances under which a party can be deemed "prevailing." 532 U.S. 598 (2001). Specifically, the Supreme Court rejected the "catalyst" theory as a basis for recovery of attorneys' fees, which "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Id.* at 601. The Supreme Court reasoned that "[a] defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial *imprimatur* on the change." *Id.* Thus, judgments on the merits and settlement agreements enforced through consent decrees serve as the primary basis for an award of attorneys' fees because they "create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." *Id.* at 604 (internal quotation marks and citation omitted). The Seventh Circuit has subsequently applied this holding to IDEA cases. *See Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 602-03 (7th Cir. 2008) (stating in a case seeking attorneys' fees under the IDEA that "[a] court may award

attorneys' fees only in those cases where the plaintiff has prevailed by securing a material alteration of the legal relationship between the parties, either, for example, by court ordered consent decree or an enforceable judgment").

Although *Buckhannon* named only two examples of circumstances creating prevailing party status—consent decrees and judgment on the merits—this short list is not exhaustive. As the Seventh Circuit explained in *Zessar v. Keith*, "[c]ases will sometimes arise where, despite there being no final judgment or consent decree, the legal relationship of the parties will be changed due to a defendant's change in conduct brought about by a judicial act exhibiting sufficient finality." 536 F.3d 788, 798 (7th Cir. 2008). Additionally, "some settlement agreements, even though not explicitly labeled as a 'consent decree' may confer 'prevailing party' status, if they are sufficiently analogous to a consent decree." *T.D. v. Lagrange Sch. Dist.*, 349 F.3d 469, 478 (7th Cir. 2003) (citation omitted). A settlement agreement may bear "the marks of a consent decree" if it is embodied in a court order or judgment, bears the signature of the judge, and provides for continuing jurisdiction to enforce the agreement. *Id.* at 478-79. Importantly, there must be "some official judicial approval of the settlement and some level of continuing judicial oversight"; the mere involvement of a judicial actor in the settlement is not enough. *Id.* at 479 (citation omitted).

Faced with adverse decisions in both the administrative proceedings as well as its subsequent appeal, the Board does not dispute that Walker is entitled to prevailing party status. (R. 47, Board's Resp. at 6.) This concession, however, comes with a substantial caveat: according to the Board, Walker is a prevailing party only "as to the implementation issue and the subsequent appeal" but not "as to the issues which were the subject of agreement between the

parties." (*Id.*) Citing *Buckhannon*, the Board argues that because "the vast majority of the relief sought by [Walker] was voluntarily agreed to by the Board," Walker is not entitled to attorneys' fees–specifically $37,917.60 worth of fees–pertaining to the November 12 IEP agreement. (*Id.* at 4-5.) Instead, the Board contends, Walker is only entitled to fees incurred in securing implementation of the IEP and the appeal of the hearing officer's decision. (*Id.* at 6.)

In support of this argument, the Board does not claim that the resolution of this case resulted from a purely private settlement or that there was no "judicial imprimatur" as required by *Buckhannon*. Instead, the Board reasons that "[e]ven when there is not complete agreement by the parties on every issue, negotiations between the parties and the agreements that arise therefrom serve to narrow issues for trial or hearing, resulting in significant judicial economy." (*Id.* at 7.) Thus, they argue, if the Court awards fees "unrelated to the issues" that the hearing officer resolved, then "the Board's efforts to resolve the primary issues were for naught." (*Id.*)

This argument fails for several reasons. First, as an initial matter, the Court does not agree with the Board's contention that "the issues that were ultimately resolved by the [hearing officer]" were "unrelated" to the November 12 IEP agreement. (*Id.*) When Walker filed a new due process complaint on November 26, 2008 in response to the Board's failure to fully implement the November 12 IEP, the Board responded that "[i]t should be noted that the Parent's complaint is an amendment to the original due process hearing request, as it stems from the same issues as the first due process hearing request and ISBE is treating it as such[.]" (A.R. 2181.)[2] While the hearing officer's final decision ultimately focused on a subset of the services agreed to in the November 12 IEP, it was clearly related to the agreement reached on November 12.

---

[2] Citations to (A.R.) refer to the administrative record of these proceedings, which was filed as R. 16 on the docket.

8

Second, the Board's argument that Walker is only a "partially" prevailing party appears to conflate the threshold prevailing party inquiry with the subsequent evaluation of the reasonableness of the requested fees under the *Hensley* factors. Under the prevailing party inquiry, a party need only have achieved judicially sanctioned success "on *any* significant issue in the litigation." *Hensley*, 461 U.S. at 433 (emphasis added). It is only after this "statutory threshold" is crossed and the lodestar has been calculated that a court inquires into whether the fees sought by the prevailing party should be reduced because they are not reasonable in relation to the results obtained. *Id.* at 434. In *Hensley*, the Supreme Court made clear that these are distinct inquiries, a holding left unchanged by *Buckhannon*.

Finally, the Board's contention that Walker is not entitled to fees related to issues that "were the subject matter of agreement between the parties" because negotiations between parties can result in "significant judicial economy" incorrectly applies the prevailing party standards set forth in *Buckhannon* and its progeny.[3] The relevant question is not whether judicial resources were preserved by an agreement reached by the parties, but rather whether the party seeking fees has "secur[ed] a material alteration of the legal relationship between the parties" through a final judgment, consent decree, or other judicial act exhibiting similar finality. *See Bingham*, 550 F.3d

---

[3] In addition to the lack of legal support, the Board's argument also does not find support in the underlying facts. The Board's reliance upon its "efforts" at resolving the main issues in this case is unpersuasive when it was the Board's refusal to implement the November 12 IEP that stymied those "efforts." It was only after Walker filed a due process request and the hearing officer ordered the Board to convene an IEP meeting that the IEP meeting occurred–on the day the due process hearing was set to commence. (A.R. 2173.) The Board–not Walker or the hearing officer–decided to repeatedly delay implementation of the November 12 IEP, thus rendering their efforts "for naught." Indeed, the Court is puzzled that the Board's position is that their efforts to resolve the primary issues were "for naught" if the Court awards fees related to the November 12 IEP agreement. The Court hopes that the Board attempted to resolve this case prior to the due process hearing not merely to avoid paying attorneys' fees, but also to expedite the resolution of the important issue of the adequacy of Ramie's education.

at 602-03 (stating that the prevailing party determination depends not on "the facts of a case, but rather only on a simple procedural posture"). For this reason, while a purely private settlement will not lead to prevailing party status because it "do[es] not entail the judicial approval and oversight involved in consent decrees," if the terms of the agreement are incorporated into an order of dismissal, thereby giving a court jurisdiction to enforce the settlement, a party may be deemed "prevailing." *Buckhannon*, 532 U.S. at 604 n.7; *see also Sonii v. Gen. Elec. Co.*, 359 F.3d 448, 449-50 (2004) (stating that a dismissal incorporating the settlement contract as a judgment of the court makes the plaintiffs prevailing parties).

The Board likely does not make any arguments that there was no "judicial imprimatur" here because the very lengthy administrative record shows the hearing officer's approval and enforcement of the November 12 IEP agreement in several orders and decisions, as well as final judgment in Walker's favor. When the Board sought to have the case dismissed after the parties formulated the November 12 IEP, the hearing officer denied the motion because not all of the issues had been resolved. (A.R. 2175-78.) After the Board delayed implementation of certain elements of the November 12 IEP, Walker filed another due process complaint, and the hearing officer subsequently granted summary judgment in favor of Walker. In that decision, the hearing officer referred to the November 12 IEP agreement and found that the Board had failed to implement all that had been promised, (A.R. 2317), and accordingly ordered the Board to fully implement the November 12 IEP within ten days, (A.R. 2320). This summary judgment decision clearly constituted a "judicially sanctioned change in the legal relationship of the parties," *Buckhannon*, 532 U.S. at 605, and the Board does not contend otherwise. Given this "material

alteration of the legal relationship of the parties," the Court concludes that Walker is a prevailing party entitled to attorneys' fees under the IDEA.

## II. Lodestar amount

After determining that Walker is entitled to prevailing party status, the Court must next decide whether the attorneys' fees she requests are "reasonable." As the party seeking the award of attorneys' fees, Walker bears the burden of establishing the reasonableness of the time expended and hourly rates charged by her attorneys. *Hensley*, 461 U.S. at 437; *Spellan v. Bd. of Ed. for Dist. 111*, 59 F.3d 642, 646 (7th Cir. 1995). Walker has submitted fee petitions which detail the activities and time allocated in the representation, as well as the hourly rates charged by attorneys Michael O'Connor and Sara Mauk and legal assistant Ines Grzeslo. Walker's request is calculated as follows:

**Administrative Proceedings**

|  | Hours | Rate | Fee Request |
|---|---|---|---|
| Mauk | 215.75 | $240 | $51,780.00 |
| Grzeslo | 15.94 | $100 | $1,594.00 |
|  |  | Attorneys' Fees | $53,374.00 |
|  |  | Costs | $1,608.40 |
|  |  | **TOTAL** | **$54,982.40** |

**Appeal**

|  | Hours | Rate | Fee Request |
|---|---|---|---|
| O'Connor | 67.45 | $380 | $25,631.00 |
| Mauk | 10.20 | $240 | $2,448.00 |
| O'Connor | 0.85 | $110 | $93.50 |
|  |  | Attorneys' Fees | $28,172.50 |
|  |  | Costs | $91.45 |
|  |  | **TOTAL** | **$28,263.95** |

**Enforcement**

|  | Hours | Rate | Fee Request |
|---|---|---|---|
| Mauk | 4.09 | $240 | $981.60 |
|  |  | **TOTAL** | **$981.60** |

There is no dispute about the hourly rates charged by O'Connor, Mauk, and Grzeslo, and the Board does not contend that those rates are unreasonable. Accordingly, the Court finds that the rates charged–$380/hour for O'Connor, $240/hour for Mauk, and $100/hour for Grzeslo–are reasonable. The Board also does not make any objections to the fees incurred during the underlying administrative proceedings or the implementation of the hearing officer's order, aside from the argument discussed above that Walker is only a "partially prevailing" party. Regarding the hours "reasonably expended" by Walker's attorneys during the appeal, however, the Board makes two primary objections.

The Board first objects to the 10.2 hours billed by Mauk during the appeal of the hearing officer's decision. (R. 47, Board's Resp. at 8.) Specifically, the Board contends that all of the work performed by Mauk was duplicative of work completed by O'Connor, and therefore unreasonable. After a close review of the fee petition, however, the Court concludes that the time Mauk spent on the appeal to which the Board objects was "reasonably expended." First, Mauk's attendance at the settlement conference was reasonable even though O'Connor also attended because Mauk was the attorney for Walker during the administrative proceedings and the Board was also represented by two attorneys at the settlement conference. Second, Mauk's time spent reviewing and commenting on briefs written by O'Connor and conferring with him regarding the case was a reasonable. While courts are "encouraged to scrutinize fee petitions for duplicative billings when multiple lawyers seek fees," *Schlacher v. Law Offices of Phillip J. Rotche & Assoc., P.C.*, 574 F.3d 852, 858 (7th Cir. 2009), the Seventh Circuit has also recognized that the "practice of law often, indeed usually, involves significant periods of consultation among counsel. Talking through a set of authorities or seeking advice on a vexing

12

problem is often significantly more efficient than one attorney's trying to wade through the issue alone." *Tchemkou v. Mukasey*, 517 F.3d 506, 511-12 (7th Cir. 2008). Additionally, Mauk spent less than eight hours total on these tasks; this time does not appear to be evidence of "duplicative" billing, but rather a reasonable and efficient use of attorney time.

Next, the Board argues that the time expended reviewing the administrative record during the appeal was unreasonable. O'Connor spent 4.75 hours reviewing the due process hearing file before answering the Board's complaint, and an additional 10.5 hours reviewing the administrative record while drafting Walker's Local Rule 56.1 statement of material facts for the motion for summary judgment. The Board argues that this time was unreasonably expended because the same firm represented Walker during both the administrative proceedings and the subsequent appeal, and "[i]t is reasonable [to] expect that members of the same firm would be familiar with the record in a case which their firm handled." (R. 47, Board's Resp. at 8.) The Court does not find this argument persuasive. While it is "reasonable to expect" a lawyer who worked on the underlying action to be familiar with the record, the same cannot be said for another lawyer in the same firm who never worked on the case. It does not appear that O'Connor was at all involved with the administrative proceedings, and the Court will not impute familiarity with the case to O'Connor solely because he works at the same firm as Mauk. Additionally, the Court finds the hours O'Connor spent reviewing the record were "reasonably expended" due to the length of the record in this case, which spans eight volumes and 2,600 pages. The Court also reaches this conclusion in light of the Board's failure to provide its own billing sheets to show the amount of time its attorneys spent on similar tasks.

The Court accordingly declines to reduce the numbers of hours expended by Walker's attorneys based on the objections raised by the Board. As such, the total award for attorneys' fees and costs stands at $84,227.95 ($82,538.10 in attorneys' fees and $1,699.85 in costs).

At this point, the Court would typically turn to the *Hensley* factors to determine if "[t]here remain other considerations that may lead the [Court] to adjust the fee upward or downward." *Hensley*, 461 U.S. at 434. Here, while the Board seeks a reduction in the fee award, the Board has failed to identify any factor relevant to this inquiry applicable to this case. The most frequently cited grounds for a reduction in the fee award, and one alluded to in the Board's argument discussed above, is that the party seeking fees has prevailed on only some of her claims. *See id.* Under this inquiry, the focus is on the "results obtained" by the party seeking fees. *Id.* In this case there is no dispute that Walker obtained all of the relief she sought. From the Board's perspective, however, the fee award should be reduced because a substantial amount of that relief was agreed to by the Board. While the Court is sympathetic to this argument, it is inapposite when inquiring into the reasonableness of the requested fees: how the results were obtained is pertinent to the prevailing party status determination; the relevant inquiry under the *Hensley* factors, however, focuses on what results were obtained, and given that success, the reasonableness of the fee request. The Board has failed to justify an extension of the holding in *Buckhannon* or point the Court to any cases in which a court has reduced a prevailing party's fee award because some of the relief obtained was agreed to by the opposing party. Accordingly,

because Walker is a prevailing party and the fees requested are reasonable, the Court grants Walkers motion for fees.[4]

## III. Prejudgment interest

Finally, Plaintiffs seek prejudgment interest on the Court's award of attorneys' fees. (R. 38, Walker's Mot. at 3.) The granting of prejudgment interest is left to the sound discretion of the district court. *United States v. Bd. of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993). In cases involving violations of federal law, prejudgment interest "should be *presumptively available*" because "[w]ithout it, compensation is incomplete and the defendant has an incentive to delay." *Id.* (quoting *Gorenstein Enter., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 436 (7th Cir. 1989)). Based on this presumption, courts may award prejudgment interest in cases for attorneys' fees under the IDEA. *See Christopher C. v. Bd. of Educ. City of Chi.*, No. 10 C 821, 2010 WL 3420266, at *4 (N.D. Ill. Aug. 26, 2010) (listing cases). If awarded, prejudgment interest is calculated using the prime rate for the appropriate period. *See First Nat'l Bank of Chi. v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999).

"[P]rejudgment interest typically accrues from the date of loss or the date on which the claim accrued" in order to "put a party in the position that it would have been in had it been paid immediately." *Am. Nat. Fire Ins. Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 935 (7th Cir. 2003) (citations omitted). District courts interpreting this language in the context of attorney's

---

[4] Walker also seeks fees for litigating the current motion up to its presentment totaling $3,262.50. Although the Court concludes that Walker is entitled to reasonable attorneys' fees for the present motion, the Court declines to award a specific amount until the Board is given an opportunity to review Walker's request and contest any time it believes was not "reasonably expended."

15

fee awards under the IDEA have generally resolved the accrual issue two ways. First, some courts have used the date the hearing officer issued the pertinent order or decision as the accrual date for the purposes of prejudgment interest. *See T.P. ex rel. Kimbrely R. v. City of Chi. Pub. Sch. Dist. 299*, No. 10 C 2604, 2011 WL 1197353, at *12 (N.D. Ill. Mar. 29, 2011); *Ryan M.*, 731 F. Supp. 2d at 796. Alternatively, other courts have used the date the plaintiffs submitted their fee petition to the defendant school board. *See Christopher C.*, 2010 WL 3420266, at *4-5; *Stephanie J. v. Bd. of Educ. of City of Chi., Dist. 299*, No. 10 C 1359, 2010 WL 3070461, at *5 (N.D. Ill. July 30, 2010). This discrepancy can be explained by the discretionary nature of prejudgment interest awards; the chosen dates reflect the specific facts and circumstances of each case.

Here, Walker contends that the Court should use the dates the fee petitions were submitted to the Board as the accrual date. (R. 48, Walker's Reply at 8.) The Court concludes, however, that the appropriate accrual date in this case is thirty days after Walker's submission of fee petitions to the Board on October 2, 2009 for the fees related to the due process proceedings, October 12, 2010 for the fees related to enforcement, and October 12, 2010 for the fees related to the appeal of the hearing officer's decision. The Seventh Circuit has emphasized that because "the purpose of a fee award is to reimburse the plaintiff for the cost he would reasonably incur if he purchased legal assistance in the market . . . the proper approach to the calculation of interest requires consideration of prevailing practices in the legal-services market." *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 272 F.3d 936, 938 (7th Cir. 2001) (citations omitted). While the parties have submitted no affidavits or evidence regarding the prevailing practices in this area of the legal-services market, the Court believes it is reasonable for the Board to have a

16

period of time to review Walker's fee petitions, like a client would have, without being charged interest. Accordingly, Walker is entitled to prejudgment interest for the attorneys' fees beginning thirty days after the submission of the fee petitions to the Board.

## CONCLUSION

For the foregoing reasons, Walker's motion for attorneys' fees (R. 38) is GRANTED. Walker is entitled to recover $84,227.95, reasonable fees for the present motion, and prejudgment interest as set forth above.

Entered:

Judge Ruben Castillo
United States District Court

**Dated:** July 25, 2011